UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. 11 CR 50018-1 |
| | ) | Judge Iain D. Johnston |
| Alex Alexander, | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Alex Alexander has filed a motion under the First Step Act seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on his risk of complications from COVID-19 because of obesity, so that he can care for his mother and the mother of his child, and because of what he describes as a recent change in sentencing laws. For the reasons that follow, Mr. Alexander's motion [100] and supplemental motion [104] are denied.

## BACKGROUND

A jury convicted Mr. Alexander of three counts: possession with intent to deliver marijuana, *see* 21 U.S.C. § 841(a)(1); being a felon in possession of a firearm, *see* 18 U.S.C. §§ 922(g)(1), 924(e)(1); and possession of a firearm in furtherance of a drug trafficking offense, *see* 18 U.S.C. § 924(c)(1)(A). Dkt. 57. United States District Judge Kapala, who has since taken inactive senior status, calculated Mr. Alexander's sentencing range to be 360 to life, *see* Dkt. 80 at 19, and sentenced him to 390 months' imprisonment, *see* Dkt. 71. Mr. Alexander appealed arguing that his trial was unfair because of improper statements by the prosecutor during closing arguments, but the Seventh Circuit affirmed. Dkt. 88. Mr. Alexander's projected release date is December 25, 2038. *See* https://www.bop.gov/inmateloc/ (last visited March 28, 2022).

Mr. Alexander now seeks compassionate release under the First Step Act. *See* 18 U.S.C. § 3582(c)(1)(A)(i). He contends that his morbid obesity and unspecified conditions related to his obesity put him at greater risk of developing serious complications should he contract COVID-19, and therefore provides an extraordinary and compelling reason to grant him compassionate release.

## ANALYSIS

Under the First Step Act, a court may reduce a defendant's sentence based on a motion by either the director of the Bureau of Prisons or by the defendant himself. *See* 18 U.S.C. § 3582(c)(1)(A). A reduction under § 3582(c)(1)(A)(i) may be based only on "extraordinary and compelling reasons," and must take into account the sentencing factors set out at 18 U.S.C. § 3553(a). For motions brought by the director, the Court may grant such motions only on the bases set out in U.S.S.G. § 1B1.13 commentary (n.1), the Court is not limited by that application

note when addressing motions filed by the defendant. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). The defendant bears the burden of establishing that he or she is entitled to compassionate release under the First Step Act. *See United States v. Gold*, 459 F. Supp. 3d 1117, 1119 (N.D. Ill. 2020). Before filing such a motion, a defendant must first ask his warden to seek a reduction on his behalf and either exhaust all administrative remedies if the request is declined, or wait 30 days after making the request, whichever comes first. *See* 28 U.S.C. § 3582(c)(1)(A). It is undisputed that Mr. Alexander exhausted his administrative remedies before filing his motion under the First Step Act. Response [107] at 8.

The Court prefaces its analysis of Mr. Alexander's arguments with the recognition that, even two years on, it and the rest of the world are still learning about the virus and, therefore, the Court is making its best judgments based upon the information currently available. *See, e.g., Cassell, et al., v. Snyders*, 990 F.3d 539, 549 (7th Cir. 2021) ("Governments and citizens have thus been forced to act with imperfect knowledge."). According to Mr. Alexander's motion, he suffers from morbid obesity based upon his Body Mass Index of 46.6, which puts him at increased risk of severe illness from the virus that causes COVID-19. Suppl. Memorandum [104] at 3. The government states that Mr. Alexander's medical records reveal that he also suffers from hypertension, *see* Response [107] at 9, though Mr. Alexander's only mention of hypertension is his reference to a Centers for Disease Control website that lists it and obesity among the conditions that create an increased risk of severe illness from COVID-19, *see* Motion [100] at 3. The government concedes that Mr. Alexander's morbid obesity and hypertension are medical conditions that can or may make a person more likely to get severely ill from COVID-19. Response [107] at 9. Based on that concession, which is consistent with CDC guidelines[1], the Court concludes that Mr. Alexander does suffer a condition or combination of conditions that place him at an increased risk of severe illness from the virus that causes COVID-19.

However, that does not end the Court's inquiry. In exercising its discretion, a court may take into consideration the state of the pandemic and an institution's efforts to contain it. *See United States v. Young*, 834 Fed. Appx. 268, 269-70 (7th Cir. 2021). In his original motion filed in February 2021, Mr. Alexander argued that his facility, FCI Three Rivers, fails to keep inmates and staff safe, for instance surfaces are not adequately sanitized, mask usage is sporadic, and social distancing is not possible. Motion [100] at 8-9. He also argues that FCI Three Rivers fails to regularly test inmates for COVID, limits testing to symptomatic patients, and thereby fails to control the spread of the virus, including by asymptomatic carriers. *Id.* at 7-9. As a result, Mr. Alexander argues, prisons such as his "have become virus hot-spots, where the BOP's inability (or unwillingness) to control the virus put the community at which their facilities are located at greater risk." *Id.* at 8. In a supplemental memorandum, his counsel also notes that, at the time, FCI Three Rivers reported 28 active COVID-19 cases and that the transmission rate caused the facility to Level 3 Operational Modifications, the most restrictive level. Suppl. Memorandum [104] at 5-6.

But FCI Three Rivers appears to have significantly curtailed the spread of the virus, and currently reports no cases of COVID-19 among inmates and 1 case among staff. *See* https://www.bop.gov/coronavirus/index.jsp (last visited March 28, 2022). It is now at Level 1

---

[1] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 28, 2022).

Operational Modifications, the least restrictive level. *Id.* Mr. Alexander's contention that his facility tests only symptomatic inmates is not supported by his medical records, which reveal that he himself has been tested for COVID-19 while asymptomatic. *See, e.g.,* Dkt. 105 at 38. In addition, Mr. Alexander has received two doses of the Moderna vaccine. *See* Dkt. 108. The medical records submitted do not reveal whether Mr. Alexander received a booster dose, but according to the Bureau of Prisons' website inmates have been offered booster shots. *See* https://www.bop.gov/coronavirus/index.jsp (last visited March 28, 2022). The Court acknowledges the present understanding that being fully vaccinated does not eliminate all threats of contracting COVID or suffering serious complications. *See United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022). But according to the CDC, vaccines do offer effective protection against COVID-19: "COVID 19-vaccines are effective and can lower your risk of getting and spreading the virus that causes COVID-19. COVID-19 vaccines also help prevent serious illness and death in children and adults even if they do get COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html* (last visited March 28, 2022).

Mr. Alexander contends that another extraordinary and compelling reason to release him is so he can become sole caretaker for his mother, who is under the care of a cardiologist, oncologist, endocrinologist, a kidney specialist, takes 20 medications a day, and is no longer able to care for herself, and to also care for the mother of his child, who has chronic Lupus "and a kidney transplant." Motion [100] at 15. Although Mr. Alexander contends that he is the only living relative who can care for his mother, according to his PSR he has a sister and brother, *see* PSR [62] at 34, and he does not explain why they or anyone else are unable to offer any care. As for the mother of his child, he does not contend that she is unable to care for herself and that no one else can offer her any of the care she needs, including their now-14-year-old daughter.

Given the BOP's efforts to curb the spread of COVID-19 within his facility, his receipt of two doses of the Moderna vaccine and opportunity to receive a booster shot, and the lack of support for his assertion that no one else can offer his mother and the mother of his child the care they require, and in an exercise of discretion based on the information currently available, the Court finds that Mr. Alexander has not identified an extraordinary and compelling reason for a compassionate release.

But even if he had identified an extraordinary and compelling reason for a compassionate release, the Court would not grant one based on its review of the sentencing factors set out in 18 U.S.C. § 3553(a). Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are the following:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from future crimes by the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a)(2). To those ends, the court must consider the following factors:

  (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

    . . .

  (3)  the kinds of sentence available;
  (4)  the kinds of sentence and the sentencing range established [under the Sentencing Guidelines];
  (5)  any pertinent policy statement [in the Sentencing Guidelines];
  (6)  the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1-7).

  Mr. Alexander's offense was very serious. It involved not only the intent to distribute a controlled substance, but also the possession of a firearm by a felon in furtherance of the controlled substance offense. His conduct demonstrated an intent to financially profit from the addictions of others and a willingness to risk the violence that can accompany the drug trade.

  The Court also considers Mr. Alexander's serious criminal history. His first reported offense involved theft and occurred when he was just 14 years old. *See* PSR [62] at 7. He was placed on probation for that and a subsequent conviction for possession of a stolen vehicle, but his probation was revoked in part because of a subsequent conviction for aggravated assault and unlawful use of a weapon when he was just 15 years old. *See id.* at 10. His offenses continued into his 20s and included convictions for additional drug offenses, numerous instances of driving on a revoked license, obstruction of justice, and attempted robbery. *See id.* at 15-24.

  In addition to evidence that was available to the sentencing judge, this Court is also able to take into account evidence of Mr. Alexander post-sentencing history and characteristics. According to his Summary Reentry Plan—Progress Report, Mr. Alexander has earned his GED, completed numerous educational courses such as keyboarding, parenting, business, and computer courses, and has completed a drug education program. Dkt. 102 at 3-4. The Court commends Mr. Alexander for all of his accomplishments, including furthering his education and obtaining life and job skills that will benefit him once released. His hard work and dedication will serve him well in the future. His current facility reports no disciplinary issues and notes that Mr. Alexander abides by all of the rules and regulations, however before his transfer he did receive four incident reports including for possessing a dangerous weapon. *Id.* at 4. But he not receive an additional incident report since 2020, and the Court is encouraged by FCI Three Rivers' report of no recent incident reports. However, while Mr. Alexander's educational accomplishments and his lack of recent disciplinary incidents reveal favorable aspects of his history and characteristics, the Court must balance those against the less favorable aspects. While his counsel argues that he presents only a minimal risk of recidivism, Suppl. Memorandum [104] at 8, his long history of criminal conduct, which continued after his prior periods of incarceration, suggests otherwise.

On balance, considering both his current accomplishments as well as his history and characteristics and the serious nature of his offense, the Court is not convinced by Mr. Alexander's assertions that he presents a minimal risk of recidivism and poses no danger to the community. His prior periods in custody did not deter him from committing additional offenses. As a result, even if Mr. Alexander had identified an extraordinary and compelling reason for reducing his sentence under the First Step Act, the Court's review of the sentencing factors do not leave it inclined to grant any reduction.

One final note. In a supplemental memorandum filed *pro se*, Mr. Alexander offered what he contends is another extraordinary and compelling reason for a compassionate release, specifically, the Supreme Court's decision last year in *Borden v. United States*, 141 S. Ct. 1817 (2021). *See Pro Se* Suppl. Memorandum [106] at 1-2. *Borden* involved a defendant sentenced as an armed career criminal based on a predicate offense of reckless aggravated assault. *Id*. at 1822. The Supreme Court concluded that an offense with a *mens rea* of recklessness cannot be a predicate offense because the ACCA defines a violent felony as one requiring the use of physical force against the person of another, which therefore requires a *mens rea* higher than recklessness. *Id*. at 1825. Mr. Alexander asserts that changes in sentencing laws can offer an extraordinary and compelling reason for a compassionate release, citing *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). But the Seventh Circuit reached a different conclusion in *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ("the discretion conferred by § 3582(c)(1)(A) does not include authority to reduce a mandatory minimum sentence on the basis that the length of the sentence itself constitutes an extraordinary and compelling circumstance warranting a sentencing reduction."). The Seventh Circuit went on to note that "the principal path and conditions Congress established for federal prisoners to challenge their sentences . . . is embodies in the specific statutory scheme authorizing post-conviction relief in 28 U.S.C. § 2255 and accompanying provisions." This Court is bound by the decisions of the Seventh Circuit. Thus, Mr. Alexander's motion under § 3582(c)(1)(A) is not the proper vehicle for his *Borden* argument, and the Court expresses no opinion on the merits of such an argument.

## CONCLUSION

For the reasons given, Mr. Alexander's motion [100] and supplemental motion [104] for a sentence reduction under the First Step Act are denied.

Date: March 28, 2022    By: _____
　　　　　　　　　　　　　　Iain D. Johnston
　　　　　　　　　　　　　　United States District Judge